150 So.2d 691

**Rube CHILDRESS**

v.

**Pauline GRIFFIN.**

**1 Div. 68.**

Supreme Court of Alabama.

Feb. 28, 1963.

618

Kenneth Cooper, Bay Minette, for appellant.

Chason & Stone, Bay Minette, for appellee.

SIMPSON, Justice.

Appeal from a garnishment proceeding instituted by appellee in the Baldwin County Circuit Court. Appellee had, prior to this suit, recovered a judgment against Loxley Tractor Corporation and by this garnish-

ment proceeding sought to collect that judgment. The necessary affidavit was filed and writ of garnishment directed and served upon Rube Childress, appellant. Notice was given to the Loxley Tractor Corporation. Appellant filed an answer denying any indebtedness to the corporation. This answer was contested and thereafter issue was made up between the parties under direction of the trial court.

Right of appellee to the writ of garnishment was based on § 1006, Tit. 7, Code of Ala. 1940, which provides:

"Any creditor of a corporation, may, by garnishment, subject the unpaid subscription of any stockholder in such corporation to the payment of its debts, without regard to whether the corporation can maintain suit against the stockholder for such subscription or not."

The lower court found that the appellant was indebted to Loxley Tractor Corporation for unpaid subscriptions in the amount of $9,440.00, and this was subject to garnishment.

The question presented to our Court is whether under the evidence the trial court was justified in the finding that a subscription contract existed between appellant and Loxley Corporation; and if so, was there a balance due the corporation which could be subjected to garnishment by a judgment creditor of the corporation?

After a careful review of the evidence in the case, we do not think the learned trial court was justified in finding a subscription contract existed between appellant and Loxley Corporation, or that there was a balance due the corporation on a subscription contract from appellant.

■ L. H. Booker, appellee's witness, testified that he had been the owner of 599 of the 600 outstanding shares in the Loxley Corporation. He testified that all the stock had been paid for. This is a most significant fact. The stock had been issued to him and fully paid for to the corporation. Ordinarily, a subscriber agrees to take and pay for shares of the capital stock upon the foundation of a corporation. An agreement to take stock after the corporation is organized and is a going concern amounts to an outright purchase of stock. 13 Am.Jur., Corporations, § 221. This is the general understanding of these terms. We are fully aware that the "form" an agreement takes is not controlling on the legal aspects, but here there was no agreement concerning the corporation. Booker entered into an agreement with appellant for the sale of 300 shares which belonged to Booker for the price of $45,000.00. The agreement was reduced to writing. Loxley Tractor Corporation was not a party to the agreement, either directly or indirectly. Although Booker testified that the partial payment by appellant was used in the operation of the business, this was not recited in the agreement, nor was there any evidence from which it could have been inferred to have been a part of the agreement of the parties. What Booker did with the funds was not in any way restricted by the written agreement or by any oral understanding. Insofar as the corporate entity was concerned the agreement between appellant and Booker was a personal transaction solely between the two parties for a private sale of stock already issued and owned by Booker. It being elementary that a subscription contract for stocks must concern the corporation, the agreement before the court amounts to no more than a mere sale of stock. It fails to meet even the most basic elements of a subscription contract.

■ Assuming arguendo that a valid subscription contract existed between the corporation and Booker, and assuming that appellant was in privity with Booker, the fact still remains that there was no unpaid balance due the corporation on any contract subject to garnishment by creditors. Booker, as hereinbefore mentioned, testified that the 599 shares he had owned and the 300 he sold to appellant had been paid for, the subscription price having been met.

Therefore, under the rule applied in Trotter Bros. v. Blount, 162 Ala. 289, 50 So. 130, which is directly in point, there being no unpaid balance due the corporation on the subscription contract, a purchaser from the original subscriber can not be held liable in garnishment unless the original subscriber had not paid the corporation for the stock; and it is immaterial what amount the purchaser paid the original subscriber for the stock. Section 1006, supra, of course contemplates a balance due on a subscription contract before garnishment will lie.

From the foregoing, we think it manifest that the judgment of the lower court must be reversed.

Reversed and remanded.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.